Below is a Memorandum Decision of the Court.



**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>PETTIT OIL COMPANY,<br><br>                Debtor. | **Case No. 13-47285** |
| KATHRYN A. ELLIS, as Trustee for the<br>Bankruptcy Estate of Pettit Oil Company,<br><br>               Plaintiff,<br><br>v.<br><br>IPC (USA), INC., a California corporation;<br>PETTIT PROPERTIES, INC., a Washington<br>corporation; and KEYBANK NATIONAL<br>ASSOCIATION, a national banking<br>association,<br><br>              Defendants. | **Adversary No. 14-04222**<br><br><br>**MEMORANDUM DECISION ON<br>KEYBANK NATIONAL ASSOCIATION'S<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT** |

This matter came before the Court on March 30, 2016, on the motion of KeyBank National Association (KeyBank) for partial summary judgment (Motion) against IPC (USA), Inc. (IPC). IPC opposed the motion, and the Court took the matter under advisement.

The Court incorporates in its Memorandum Decision the facts set forth in its prior decisions rendered in Pettit Oil Company's (Debtor) main bankruptcy case. Following is a brief summary of the facts relevant to this decision.

The Debtor was a distributor of bulk oil, gas, diesel and lubricant products to transportation companies, industrial goods and service producers, logging companies, retailers,

MEMORANDUM DECISION ON KEYBANK
NATIONAL ASSOCIATION'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

agricultural producers, military installations, home customers, and counties and other municipalities. The Debtor filed a voluntary Chapter 11 petition on November 25, 2013 (Petition Date). The Debtor's Chapter 11 case was converted to Chapter 7 on January 17, 2014, and the Chapter 7 Trustee was appointed. On February 13, 2014, IPC filed a Motion for Relief from Stay to collect on accounts receivable and inventory. After hearings held on March 6 and April 10, 2014, the Court rendered an oral decision and order on April 15, 2014, determining that the Trustee was "estopped from challenging IPC's interest in the proceeds, inventory or accounts receivable generated from fuel delivered to the Debtor after December 19, 2013." Order on Estoppel Issue and Denying IPC's Motion for Relief from Stay 1:22-24, ECF No. 580. No appeal was taken. On August 27, 2014, the Trustee filed the current adversary proceeding asserting claims against IPC, Pettit Properties, Inc. (Pettit Properties), and KeyBank, as amended by stipulation dated February 6, 2015. The Court heard multiple motions for summary judgment on March 30, 2016. This Memorandum Decision addresses the meaning of the phrase "the amounts that IPC paid for inventory" as applied to the formula to calculate "Excess Funds" or commission (Commission) as used in the Consignment & Service Agreement (Consignment Agreement) entered into between the Debtor and Pettit Properties.

The Consignment Agreement was entered into on or about September 1, 2013. Under the terms of the Consignment Agreement, IPC was to deliver fuel to the Debtor's cardlock facilities to be sold to the Debtor's customers. Between September 1, 2013 and January 15, 2014, IPC caused regular fuel deliveries to be made to the cardlock sites. The Consignment Agreement provides that IPC was to retain ownership of the fuel being sold at the cardlock sites, and that all fuel sales would be made from IPC to the Debtor's customers. The Consignment Agreement further provides that the Debtor was responsible for maintaining the cardlock sites and accounting records for the fuel sales. The Debtor was to invoice the customers and provide instructions for the customers to pay IPC.

Section 8 of the Consignment Agreement provides the formula for calculating the amounts owing the Debtor, or IPC, from IPC's fuel sales at the cardlock sites. There are six factors, including the disputed phrase, set forth in Section 8 that reduce the amount that IPC was to pay the Debtor: (i) "amounts that IPC paid for inventory," (ii) Freight Costs, (iii) Carrying Costs, (iv) Bad Debt, (v) Aged Receivables, and (vi) other amounts due to IPC from Pettit including Inventory Loss. If the net amount remaining after such deductions was positive, then that amount was considered "Excess Funds" and was the Commission earned by the Debtor. If the net amount remaining was negative, then that amount was considered "Shortfall Funds," which the Debtor was required to pay to IPC. IPC and KeyBank dispute the amount owing by IPC to the Debtor under the Consignment Agreement.

As an initial matter, IPC contends that KeyBank's Motion should be denied because under California law, KeyBank as a non-party to the Consignment Agreement lacks standing to enforce or urge an interpretation of the agreement contrary to the contracting parties' mutual intent. By its express terms contained in Section 19, the Consignment Agreement must be construed and enforced according to the laws of the State of California.

IPC's argument fails for two reasons. First, IPC is affirmatively seeking to enforce the Consignment Agreement against KeyBank. In its answer and supplemental answer to the Trustee's complaint, IPC asserts that KeyBank is wrongfully holding cash proceeds from the sale of IPC fuel that is the property of IPC under the Consignment Agreement. IPC has provided no legal authority to support its position that when a party to a contract seeks to enforce the contract against a third party, that third party cannot defend the action by disputing the terms of the contract.

Second, based on a 1978 amendment to Cal. Civ. Proc. Code § 1856, California abolished the so-called "Stranger Rule" so that the parol evidence rule now applies in litigation involving third parties in the same manner it applies in actions between the parties to the instrument. <u>Kern Cty. Water Agency v. Belridge Water Storage Dist.</u>, 18 Cal. App. 4th 77, 86

**Below is a Memorandum Decision of the Court.**

1   (1993); <u>Roots Ready Made Garments Co., W.L.L. v. Gap, Inc.</u>, 405 F. App'x. 120, 121 (9th Cir.

2   2010).   Accordingly, KeyBank has standing to bring the Motion.

3          As previously stated, at issue in KeyBank's Motion is how the Excess Funds, or

4   Commission, are determined under the Consignment Agreement.   The parties agree that the

5   pertinent phrase is contained within Section 8 of the Consignment Agreement.   IPC contends

6   that the phrase "amounts that IPC paid for inventory" should be interpreted to mean "Base Fuel

7   Price" as defined in Section 6 of the Consignment Agreement and priced pursuant to the formula

8   in Exhibit B to the Consignment Agreement.   KeyBank argues that the phrase should be given

9   its ordinary meaning—actual amounts IPC paid—without consideration of parol or other extrinsic

10  evidence.

11         It is undisputed that the meaning given to "amounts that IPC paid for inventory" affects

12  the amount of Excess Funds that IPC owes to the Debtor.   IPC's interpretation increases "the

13  amounts IPC paid for inventory," and thus reduces the Commission it owes the Debtor.   Under

14  California law, the Court must first determine as a matter of law whether the Consignment

15  Agreement is an integrated contract, meaning the parties intended it "as a final expression of

16  their agreement with respect to the terms included therein" and as "a complete and exclusive

17  statement of the terms of the agreement."   Cal. Civ. Proc. Code § 1856(d).   In this regard, Section

18  18 of the Consignment Agreement provides as follows:

19         <u>Entirety of Agreement</u>. The terms and conditions set forth herein constitute the
           entire agreement between the parties and supersede any communications or
20         previous agreements with respect to the subject matter of this Agreement. No
           amendment or other change can be made to this Agreement other than in writing
21         and signed by both parties.

22  The presence of an integration clause may be considered on the issue of whether a writing is

23  integrated.   <u>Masterson v. Sine</u>, 68 Cal. 2d 222, 225 (1968).   IPC does not dispute KeyBank's

24  position that the Consignment Agreement is an integrated contract.   Based on the integration

25  clause contained within the Consignment Agreement and the lack of any argument or evidence

**Below is a Memorandum Decision of the Court.**

to the contrary, the Court concludes as a matter of law that the Consignment Agreement is integrated.

The Court must next determine whether extrinsic evidence is nonetheless admissible to determine the meaning of the pertinent phrase in Section 8. "'Under the parol evidence rule, when a contract is integrated . . . extrinsic evidence cannot be used to vary or contradict the instrument's express terms.'" Hot Rods, LLC v. Northrop Grumman Sys. Corp., 242 Cal. App. 4th 1166, 1175 (2015) (quoting Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC, 185 Cal. App. 4th 1050, 1061 (2010)).[1] This substantive rule is based on the premise that the integrated "written instrument *is* the agreement of the parties." Gerlund v. Elect. Dispensers Int'l, 190 Cal. App. 3d 263, 270 (1987). Nonetheless, "[o]rdinarily, even in an integrated contract, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue, although it cannot be used to contradict it or offer an inconsistent meaning." Hot Rods, 242 Cal. App. 4th at 1175. The language, however, must be reasonably susceptible to the proposed meaning. Hot Rods, 242 Cal. App. 4th at 1176. The issue, then, is whether the phrase, "amounts that IPC paid for inventory" is reasonably susceptible to the meaning urged by IPC—the definition of "Base Fuel Price." A court can determine as a matter of law that language of a writing is not "reasonably susceptible" to the meaning claimed by the proponent of the parol evidence. William E. Wegner et al., Cal. Prac. Guide Civ. Trials & Ev. Ch. 8E-G, 5.b(2) (2015); see also, Gerlund, 190 Cal. App. 3d at 273-76.

The Consignment Agreement and exhibits contain at least 24 defined terms, including "Fuel," "Base Fuel Price," "Full Costs," "Freight Cost," and "Carrying Cost." Section 8 uses the

---

[1] As codified in Cal. Civ. Proc. Code § 1856(a), "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous agreement." Additionally, "[t]erms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement." Cal. Civ. Proc. Code § 1856(b).

1
2
3

defined terms in the formula it sets out to calculate the Commission to be paid by IPC to the Debtor. Significantly, the Commission formula uses a defined term in every instance except in the phrase "the amounts that IPC paid for inventory," as follows:

4
5
6
7
8
9

> After the end of each calendar month, IPC shall aggregate the payments ("Cash Payments") that IPC received from the Cardlock Customers in such calendar month in response to the IPC Invoices and shall deduct from the Cash Payments the following: (i) the amounts that IPC paid for inventory to stock the Cardlocks with Fuel during such month, (ii) the Freight Costs paid during such month, (iii) the Carrying Costs to finance inventory and accounts receivable during such calendar month, (iv) Bad Debt incurred during such month or prior months which remain unreimbursed by Pettit and (v) the Aged Receivables incurred during such month or prior months which have not been previously withheld and (vi) any other amounts due to IPC from Pettit under this Agreement including but not limited to Inventory Loss incurred during such month or prior months which remain unreimbursed by Pettit.

10
11

Additionally, the term "Base Fuel Price" or "Base Price" is used at least nine times in the Consignment Agreement, but not once in Section 8.

12
13
14
15
16
17
18
19

IPC contends that the parties intended the phase "amounts that IPC paid for inventory" to have the same meaning as the defined term "Base Fuel Price," which Section 6 defines as the "base price of each load of Fuel supplied by IPC into the Cardlock" and priced according to the "formula set forth in Exhibit B." Pursuant to Exhibit B, this price is based on the same day daily OPIS (Oil Price Information Service) contract average minus a fixed amount. According to KeyBank, the OPIS market rate price is regarded as the "sticker price" for fuel, which suppliers similar to IPC do not pay. KeyBank contends that the amount IPC actually paid for the fuel is significantly less than the Base Fuel Price. IPC does not dispute this representation.

20
21
22
23
24
25

Based on the record before the Court, it is apparent that the parties intentionally defined "Base Fuel Price" in the Consignment Agreement; that they knew how to use and apply the term in the Consignment Agreement as demonstrated by the term's appearance in other sections in the Consignment Agreement; and that they omitted this defined term in the formula used to calculate Excess Funds in Section 8. Moreover, the integrated contract carefully defines some 23 other terms and uses these terms liberally throughout the Consignment Agreement. The

1
2
3
4

contracting parties in Section 8 chose to use a term or phrase other than "Base Fuel Price." The Court agrees with KeyBank that in the context of the integrated Consignment Agreement, the phrase "amounts that IPC paid for inventory" can only mean what it says—the amounts that IPC paid for its fuel inventory.

5
6
7
8
9
10
11
12
13
14

Extrinsic evidence is admissible to show what the parties meant by what they said, but inadmissible to show the parties meant something other than what they said. <u>Larsen v. Johannes</u>, 7 Cal. App. 3d 491, 500 (1970). To give the phrase "amounts that IPC paid for inventory" the same meaning as "Base Fuel Price" would require the Court to add or vary the language contained within the integrated writing; California law prohibits this. <u>See</u> <u>Masterson</u>, 68 Cal. 2d at 225. Accordingly, the Court concludes as a matter of law that the phrase "amounts that IPC paid for inventory" used in Section 8 of the Consignment Agreement is not reasonably susceptible to the meaning of the defined term "Base Fuel Price." The competing and contradictory declarations provided by the parties do not alter this result. KeyBank has established that it is entitled to summary judgment as a matter of law.

15

///End of Memorandum Decision///

16
17
18
19
20
21
22
23
24
25

MEMORANDUM DECISION ON KEYBANK
NATIONAL ASSOCIATION'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7