Entered on Docket May 19, 2016

**Below is a Memorandum Decision of the Court.**



_____
**Paul B. Snyder
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>PETTIT OIL COMPANY,<br><br>                Debtor. | Case No. 13-47285 |
| KATHRYN A. ELLIS, as Trustee for the Bankruptcy Estate of Pettit Oil Company,<br><br>                Plaintiff,<br><br>      v.<br><br>IPC (USA), INC., a California corporation; PETTIT PROPERTIES, INC., a Washington corporation; and KEYBANK NATIONAL ASSOCIATION, a national banking association,<br><br>                Defendants. | Adversary No. 14-04222<br><br>**MEMORANDUM DECISION ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT RELATED TO THE TRUSTEE'S 11 U.S.C. § 544 CLAIMS** |

      This matter came before the Court on March 30, 2016, on multiple motions for summary judgment. This Memorandum Decision addresses the Chapter 7 Trustee's (Trustee) Motion for Partial Summary Judgment for Trustee's First Cause of Action for Declaratory Relief and for Trustee's Second

MEMORANDUM DECISION ON MOTIONS
FOR PARTIAL SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 544 CLAIMS - 1

Cause of Action as it Relates to the Trustee's 11 U.S.C. § 544 Claim.[1]  Count One seeks declaratory judgment that the Consignment & Service Agreement (Consignment Agreement) between Pettit Oil Company (Debtor) and IPC (USA), Inc. (IPC) is a "true" consignment agreement and that IPC has an unperfected interest in the goods and proceeds under that agreement.  Count Two alleges a claim under § 544(a)(1) and on summary judgment the Trustee seeks a determination that the Trustee, as a hypothetical judgment lien creditor, has a senior interest to IPC in the fuel that was in the Debtor's tanks as of November 25, 2013 (Petition Date), and in the proceeds (cash in the Debtor's bank account) and accounts receivable from sales of consigned fuel prior to the Petition Date.  The parties agree that, should the Trustee prevail on these two related claims, there are fact issues as to the proper amount of damages that will require further evidence to establish.

The Court incorporates in this Memorandum Decision the facts set forth in its Memorandum Decision on Motions for Summary Judgment Related to the Trustee's 11 U.S.C. § 549 Claims.

**1.  Count One – Declaratory Judgment**

In accordance with Section 19 of the Consignment Agreement, the parties agree that the Consignment Agreement is governed by California law as to construction and enforcement.

A consignment transaction exists under California Commercial Code (Cal. Com. Code) § 9102(a)(20) (West 2014) (adopting the Uniform Commercial Code (UCC) provision) if:

> (A)  The merchant satisfies all of the following conditions:
>
> > (i) He or she deals in goods of that kind under a name other than the name of the person making delivery.
> > (ii) He or she is not an auctioneer.
> > (iii) He or she is not generally known by its creditors to be substantially engaged in selling the goods of others.
>
> (B)  With respect to each delivery, the aggregate value of the goods is one thousand dollars ($1,000) or more at the time of delivery.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION ON MOTIONS
FOR PARTIAL SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 544 CLAIMS - 2

**Below is a Memorandum Decision of the Court.**

    (C) The goods are not consumer goods immediately before delivery.

    (D) The transaction does not create a security interest that secures an obligation.

  If these elements are met, then Article 9 of the California Commercial Code, governing secured transactions, applies to the transaction. See Cal. Com. Code § 9109(a)(4) (West 2015). Accordingly, the transaction is then subject to Article 9's filing and priority rules.

  In accordance with Cal. Com. Code § 9103(d) (West 2001), the security interest of a consignor of goods subject to a consignment is considered a purchase money security interest. To perfect and protect its interest in consigned goods, a consignor must either file a UCC-1 financing statement or show that a consignee is generally known by its creditors to be substantially engaged in selling the goods of others. See Fariba v. Dealer Servs. Corp., 178 Cal. App. 4th 156, 166 (2009). If a consignor fails to perfect its interest, the consignor's interest will be subordinated to any other perfected lien creditor of the consignee. See Cal. Com. Code. § 9319 (West 2001) (consignee is deemed to have the right and title of consignor, unless consignor is perfected); Cal. Com. Code § 9317(a)(2) (West 2014) (subsequent perfected interest defeats unperfected consignor). Specifically, as will be discussed further infra, an unperfected consignor will be subordinate to a trustee or debtor-in-possession who becomes a hypothetical lien creditor as of the date of a bankruptcy filing under § 544(a)(1). See In re Valley Media, Inc., 279 B.R. 105, 132 (Bankr. D. Del. 2002).

  At the March 30, 2016 hearing, IPC conceded that all of the elements of Cal. Com. Code § 9102(a)(20) are met in this case. The Court also concludes that the Consignment Agreement is a consignment transaction within the California definition. The Debtor was a merchant, as defined under California law, and IPC delivered it petroleum products for sale. The Debtor (1) dealt in goods of the same kind (fuel) under its own name, rather than IPC's, (2) was not an auctioneer, and (3) nothing in the record indicates that the Debtor was generally known by its creditors to be substantially engaged in selling the goods of others. The Debtor had just entered into the Consignment Agreement two months before filing bankruptcy, and it was the Debtor's only consignment agreement. The Trustee has put

MEMORANDUM DECISION ON MOTIONS
FOR PARTIAL SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 544 CLAIMS - 3

Case 14-04222-MJH  Doc 91  Filed 05/19/16  Ent. 05/19/16 12:08:49  Pg. 3 of 8

**Below is a Memorandum Decision of the Court.**

evidence into the record that each delivery of fuel by IPC was in excess of $1,000, and IPC has not indicated this fact is in dispute. The goods were not consumer goods immediately before delivery, and the transaction was not a security interest securing an obligation.

IPC also does not dispute that it did not perfect its security interest in the consigned products. IPC did not file a UCC-1 financing statement, and made no attempt to establish that the Debtor was known by its creditors to be substantially engaged in selling the goods of others in order to eliminate the need for a UCC-1 filing to perfect.

The Court grants the Trustee summary judgment as to her First Cause of Action and declares that the parties' Consignment Agreement is a "true" consignment agreement within Cal. Com. Code § 9102(a)(20), and therefore subject to the secured transactions provisions of California law. Accordingly, IPC's security interest in the consigned goods was not perfected.

### 2. Count Two – Avoidance under 11 U.S.C. § 544(a)(1)

Section 544(a)(1) gives to the trustee, as of the commencement of a bankruptcy case, "the rights and powers of a hypothetical creditor who obtained a judicial lien on all of the property in the estate at the date the petition in bankruptcy was filed." In re Commercial W. Fin. Corp., 761 F.2d 1329, 1331 n.2 (9th Cir.1985). "One of these powers is the ability to take priority over or 'avoid' security interests that are unperfected under applicable state law . . . ." Commercial W. Fin., 761 F.2d at 1331 n.2. "Avoiding such interests relegates them to the status of a general unsecured claim." Neilson v. Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520, 526 (9th Cir. 2001) (citing 5 L. King, Collier on Bankruptcy ¶¶ 544.02, 544.05 (15th ed. rev. 2000)).

In a consignment context, where a consignor has failed to perfect its security interest in consigned goods, it may not assert an ownership right as to the consigned goods held by a debtor and defeat a hypothetical lien creditor under § 544(a). Valley Media, 279 B.R. at 132-133. As to the fuel that was in the tanks in the Debtor's cardlock sites on the Petition Date, the fuel constitutes goods in the consignee's (Debtor's) possession; under the governing California law and UCC provisions on

**Below is a Memorandum Decision of the Court.**

consignment, the Debtor had all rights and title in the consigned goods as to its creditors. IPC concedes that it holds only an unperfected security interest; thus, the Trustee as a lien creditor of the Debtor under § 544(a)(1) is senior to IPC in the goods. IPC admitted at the summary judgment hearing that it does not dispute that the Trustee is secured in the fuel that was stored at the Debtor's cardlock sites as of the Petition Date. Therefore, the Court grants, in part, the Trustee's motion for summary judgment under § 544(a)(1) as to the fuel inventory in existence on the Petition Date.

As the Trustee is the senior secured party in the fuel inventory, it necessarily follows that the Trustee is also the senior secured party as to any proceeds arising from the further sales of those goods. See Cal. Com. Code. § 9315(a)(2) (West 2001) (security interest attaches to any identifiable proceeds of collateral). Accordingly, the Court also grants the Trustee summary judgment regarding her entitlement to any proceeds from the sales of the fuel that was in the ground on the Petition Date.

IPC, however, does contest that the Trustee is the senior secured party in (1) accounts receivable for purchases of consigned fuel and (2) the cash proceeds of consigned fuel sales that were in the Debtor's bank account on the Petition Date, from customers who sent payments to the Debtor instead of to IPC. IPC argues that, as the entitlement to the proceeds of the sales belong to IPC and were to be sent directly to IPC under the Consignment Agreement, the Debtor held the accounts receivable and cash in a constructive trust for IPC and they are not subject to attachment by the Trustee under § 544.

Courts typically look to state law to determine whether a party has demonstrated that a constructive trust should be imposed. See Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1118 (5th Cir. 1995); Erickson v. Nat'l Bank of Alaska (In re Seaway Express Corp.), 912 F.2d 1125, 1127 (9th Cir. 1990) (looking to Washington law to determine if constructive trust should be imposed). It is federal bankruptcy law, however, that ultimately determines whether a constructive trust is appropriate in a bankruptcy case. "[W]hile state law must be the starting point in determining whether a constructive trust *may* arise in a federal bankruptcy case, that law must be applied in a

**Below is a Memorandum Decision of the Court.**

manner not inconsistent with federal bankruptcy law." Unicom Comput. Corp. v. Mitsui Mfrs. Bank (In re Unicom Comput. Corp.), 13 F.3d 321, 325 n.6 (9th Cir.1994). Courts have routinely rejected an argument that a constructive trust should be imposed where doing so alters the priority scheme of creditors set forth in the Bankruptcy Code. See Unicom, 13 F.3d at 324; Kunkel v. Ries (In re Morken), 199 B.R. 940, 966 (Bankr. D. Minn. 1996).

Case law does provide several examples of how assets deemed to be held by a debtor in a constructive trust are not subject to the strong-arm rights of § 544. See, e.g., In re Howard's Appliance Corp., 874 F.2d 88 (2d Cir. 1989) (constructive trust imposed where debtor had moved collateral out of state without informing creditor, preventing creditor's ability to perfect in the new state); Claybrook v. Consol. Foods, Inc. (In re Bake-Line Group, LLC), 359 B.R. 566 (Bankr. D. Del. 2007) (debtor deposited misdelivered check that had been made out to creditor); In re DVI, Inc., 306 B.R. 496 (Bankr. D. Del. 2004) (debtor wrongfully transferred joint business venture to its sole control and had been sued for such actions prepetition). However, those cases all involve situations where the inequitable actions of a debtor led to it depriving another party of that party's funds or property. See Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos), 183 B.R. 149, 154 (Bankr. N.D. Ill. 1995) (constructive trust is remedy for unjust enrichment, not a real trust). In this case, as the Trustee points out, the Debtor clearly had rights to accept the fuel payments sent to the Debtor from customers who had purchased IPC fuel. The Consignment Agreement specifically contemplated this situation and provided a mechanism and procedure under which the Debtor would make periodic payments to IPC to account for those debts. The imposition of a constructive trust requires "a wrongdoing greater than the nonpayment of a monetary debt." In re Monnig's Dep't Stores, Inc., 929 F.2d 197, 203 (5th Cir. 1991).

In line with these principles, courts have repeatedly ruled that a constructive trust is not the proper remedy to allow a creditor to avoid the impacts of its failure to property perfect a secured interest. See, e.g., In re Royal West Props., Inc., 441 B.R. 158, 170-71 (Bankr. S.D. Fla. 2010)

**Below is a Memorandum Decision of the Court.**

(rejecting constructive trust for investors whose security interests had lapsed); <u>In re K-Ram, Inc.</u>, 451 B.R. 154, 172 (Bankr. D. N.M. 2011) (rejecting constructive trust over funds placed in court registry prepetition where creditor was unsecured due to its own failure to perfect, not due to any wrong committed by the debtor); <u>Alexander v. Breeden (In re The Bennett Funding Group, Inc.)</u>, 234 B.R. 600, 607 (Bankr. N.D.N.Y. 1999) (denying constructive trust to lessor who had failed to obtain possession of leases or to file a proper financing statement); <u>Morken</u>, 199 B.R. at 964-66 (rejecting constructive trust on proceeds of sale of cattle in different state where creditor had failed to perfect); <u>O'Connor Lumber Co, Inc. v. Pratt Gen. Contractors (In re Pratt Gen. Contractors)</u>, 142 B.R. 47, (Bankr. D. Conn. 1992) (rejecting constructive trust for subcontractor that had failed to perfect its mechanic's lien). See also <u>Seaway Express</u>, 912 F.2d at 1129 (rejecting imposition constructive trust on behalf of bank that had failed to take steps to protect its interest). The Court concludes the situation presented in this case does not support the imposition of a constructive trust.

As a constructive trust will not be imposed, the question remains whether as a hypothetical lien creditor, the Trustee has a secured interest in the accounts receivable and cash proceeds that were in the Debtor's accounts on the Petition Date. If so, the Trustee has the senior interest in those assets as IPC's interest in the funds was not perfected due to its failure to file a UCC-1 financing statement. The extent of a bankruptcy trustee's rights as a judicial lien creditor is measured by the substantive law of the jurisdiction governing the property in question. <u>First T.D.</u>, 253 F.3d at 531 (citing 5 L. King, <u>Collier on Bankruptcy</u> ¶ 544.02, p. 544-5 (15th ed. rev. 2000)). While the Consignment Agreement provides that California law applies to construe and enforce the Consignment Agreement, the collateral to be executed upon by a judgment creditor are located in Washington. It appears that Washington and California law may differ on the ability to execute on the accounts receivable held by the Debtor in Washington. <u>Compare</u> Wash. Rev. Code § 6.17.090 <u>with</u> Cal. Civ. Pro. § 697.530. The parties did not provide any briefing or argument on the scope of the Trustee's hypothetical judicial lien, or on the choice-of-law issue as to which state's law may govern the determination. See <u>Mandalay</u>

MEMORANDUM DECISION ON MOTIONS
FOR PARTIAL SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 544 CLAIMS - 7

**Below is a Memorandum Decision of the Court.**

Resort Group v. Miller (In re Miller), 292 B.R. 409, 413 (9th Cir. BAP 2003) (in a federal case based on exclusive jurisdiction, such as bankruptcy, the court applies federal choice-of-law rules, following the Restatement (Second) of Conflict of Laws). As such, the Court denies the remainder of the Trustee's summary judgment motion as to her Second Cause of Action, without prejudice, as to whether the Trustee holds a senior secured interest in the accounts receivable and cash sale proceeds held by the Debtor on the Petition Date based on prior sales of IPC fuel.

///End of Memorandum Decision///

MEMORANDUM DECISION ON MOTIONS
FOR PARTIAL SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 544 CLAIMS - 8