**Below is a Memorandum Decision of the Court.**



_____

**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

---

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>PETTIT OIL COMPANY,<br><br>                      Debtor. | **Case No. 13-47285** |
| KATHRYN A. ELLIS, as Trustee for the Bankruptcy Estate of Pettit Oil Company,<br><br>                      Plaintiff,<br><br>v.<br><br>IPC (USA), INC., a California corporation; PETTIT PROPERTIES, INC., a Washington corporation; and KEYBANK NATIONAL ASSOCIATION, a national banking association,<br><br>                      Defendants. | **Adversary No. 14-04222**<br><br>**MEMORANDUM DECISION ON CONTINUED MOTIONS FOR SUMMARY JUDGMENT RELATED TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS** |

This matter came before the Court on June 29 2016, for a continued hearing on several motions for summary judgment. This memorandum decision pertains to IPC (USA), Inc.'s (IPC) Motion and Notice Thereof for Partial Summary Judgment Dismissing Section 549 Claims Under Trustee's Second Cause of Action for Recovery of Post-Petition Transfers (IPC's Motion), and

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 1

**Below is a Memorandum Decision of the Court.**

the Trustee's Motion for Partial Summary Judgment for Trustee's Third Cause of Action as it

Relates to the Trustee's 11 U.S.C. § 549[1] Claim (Trustee's Motion).

      On May 19, 2016, the Court entered a Memorandum Decision on Motions for Summary

Judgment Related to the Trustee's 11 U.S.C. § 549 Claims and an Order on Motions for

Summary Judgment Related to the Trustee's 11 U.S.C. § 549 Claims (Order).  In the Order, the

Court, in relevant part, denied summary judgment without prejudice "as neither party has

established as a matter of law that the transfers the Trustee seeks to avoid were or were not

transfers of 'property of the estate' as required by 11 U.S.C. § 549(a)." Order 2:10-12, ECF No.

90.  An order was subsequently entered rescheduling the dispositive motion deadline and setting

further hearing on June 29, 2016.  Supplemental briefs were filed by IPC, Kathryn Ellis as trustee

(Trustee) for the bankruptcy estate of Pettit Oil Company (Debtor), and KeyBank National

Association (KeyBank).  After the June 29, 2016 hearing, the Court took both motions under

advisement.  The Court's decision was subsequently postponed pending mediation proceedings.

Unfortunately, this issue was not resolved.

      Initially, the Court incorporates herein the facts set forth in the Memorandum Decision on

Motions for Summary Judgment Related to the Trustee's 11 U.S.C. § 549 Claims.  The issue

before the Court is whether consigned goods delivered to a debtor postpetition become property

of the debtor's estate.  Pursuant to § 549, the Trustee may only avoid postpetition transfers of

"property of the estate."  Property of the estate is defined as "all legal or equitable interests of

the debtor in property as of the commencement of the case." Section 541(a)(1).  The existence

and nature of a debtor's interest in property is determined by nonbankruptcy law.  See Butner v.

United States, 440 U.S. 48, 55 (1979).

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 2

**Below is a Memorandum Decision of the Court.**

It has already been determined that the Consignment Agreement is a "true" consignment agreement as defined in Cal. Com. Code § 9102(a)(20) (West 2014), and that IPC failed to file a UCC-1 financing statement. IPC's interest in the consigned goods is unperfected. The Court has also determined that despite its unperfected status, IPC retained title to the goods and ownership of the inventory and proceeds pursuant to the provisions of the Consignment Agreement. The parties disagree as to what interest, if any, the Debtor retained in goods delivered by IPC postpetition.

The parties have spent considerable time debating the meaning of Cal. Com. Code § 9319(a) (West 2001) and its importance in resolving this issue. Cal. Com. Code § 9319(a) provides:

> (a) Except as otherwise provided in subsection (b), for purposes of determining the rights of creditors of, and purchasers for value of goods from, a consignee, while the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer.
> (b) For purposes of determining the rights of a creditor of a consignee, law other than this division determines the rights and title of a consignee while goods are in the consignee's possession if, under this chapter, a perfected security interest held by the consignor would have priority over the rights of the creditor.

As Cal. Com. Code § 9319(a) specifically provides that the "consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer," both the Trustee and KeyBank assert that Cal. Com. Code § 9319(a) requires a finding that the consigned goods became property of the Debtor's estate. According to this argument, because the consignor retains title and ownership of the goods, and because Cal. Com. Code § 9319(a) endows the consignee with those same rights while in the consignee's possession, the consignee necessarily has an interest in the goods sufficient to bring the property into the estate upon bankruptcy filing by virtue of the relatively expansive provisions of § 541(a).

This argument, however, would appear to grant the consignee a greater interest than provided by Cal. Com. Code § 9319(a). The plain language of Cal. Com. Code § 9319(a) does

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 3

not state that the consignee "has" or "possesses" the same rights as the consignor, but that the consignee is "deemed" to have such rights. As indicated in Official Comment 2 to Uniform Commercial Code (U.C.C.) § 9-319, the consignee is "deemed" to acquire such rights so that "creditors of the consignee can acquire judicial liens and security interests in the goods."[2]

IPC argues that Cal. Com. Code § 9319(a) does not resolve the property of estate issue because it is not determinative in defining the relationship between the consignor and consignee. The Court agrees.

The plain language of Cal. Com. Code § 9319(a) limits its application to determining "the rights of creditors of, and purchasers for value of goods" from a consignee. IPC is correct that the Official Comments to the U.C.C. confirm this interpretation. Official Comment 6 to U.C.C. § 9-109,[3] which sets forth the scope of Article 9, provides in relevant part: "For purposes of determining the rights and interests of third-party creditors of, and purchasers of the goods from, the consignee, but not for other purposes, such as remedies of the consignor, the consignee is deemed to acquire under this Article whatever rights and title the consignor had or had power to transfer. . . . The relationship between the consignor and consignee is left to other law." Official Comment 6 to U.C.C. § 9-109 (emphasis added).

The Delaware Bankruptcy Court in In re Valley Media, Inc., 279 B.R. 105 (Bankr. D. Del. 2002), recognized the limited application of U.C.C. § 9-319, stating:

> Neither the application of former UCC § 2-326(3) or revised UCC § 9-319(a) affects the ownership rights of the consignor in relation to the consignee. Therefore, I must reject the Debtor's contention that the Objecting Vendors lost title to the Contested Inventory under California law when they did not perfect their consignment interests and that such title then vested in Valley.

Valley Media, 279 B.R. at 123 (citation and footnote omitted).

---

[2] U.C.C. § 9-319 is enacted in the California Code at Cal. Com. Code § 9319, and the Official Comment is restated as Uniform Commercial Code Comment-2014 Update.
[3] U.C.C. § 9-109 is enacted in the California Code at Cal. Com. Code § 9109 (West 2015), and the Official Comment is restated as an Assembly Committee Comment.

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 4

**Below is a Memorandum Decision of the Court.**

The Trustee argues that the Delaware Bankruptcy Court in <u>Valley Media</u> made an error in either ignoring or misinterpreting the effect of Cal. Com. Code § 9109(a)(4) (Division 9[4] applies to consignments) and Cal. Com. Code § 9103(d) (West 2001) (security interest of a consignor in goods is a purchase money security interest in inventory). According to the Trustee, the <u>Valley Media</u> court should have examined the rights of the consignor and consignee in the context of a security interest rather than a title analysis.

The consignor/consignee relationship at issue, however, is not one that can be viewed strictly as a security interest. The Court has previously determined that the Consignment Agreement is a true consignment. Under Article 9, a consignment is a security interest "*only* for the purpose of protecting the consignee's creditors. It does not otherwise alter the contractual relationship between the consignor and consignee." <u>French Design Jewelry, Inc. v. Downey Creations, LLC (In re Downey Creations, LLC)</u>, 414 B.R. 463, 473 (Bankr. S.D. Ind. 2009) (citing <u>Valley Media</u>, 279 B.R. at 133). The court further stated:

> Thus, Article 9 is relevant to the Plaintiffs' dispute with Downey only if Downey is sitting in the shoes of a hypothetical lien creditor. In other words, but for Downey's strong arm powers under § 544(a)(1), Article 9 provides Downey no defense to the Plaintiffs' claim for replevin.

<u>Downey Creations</u>, 414 B.R. at 473.

This Court recognized this distinction in its' July 1, 2016 oral ruling in the Trustee's favor on her motion for summary judgment related to the § 544 claim, but is aware that several bankruptcy courts have employed a property estate analysis to evaluate a debtor/consignee's rights in consigned goods. <u>See, e.g.</u>, <u>North Star Diamond Co. v. Brusich & St. Pedro Jewelers, Inc. (In re Brusich & St. Pedro Jewelers, Inc.)</u>, 28 B.R. 545, 546 (Bankr. E.D. Pa. 1983) (holding that goods consigned to a debtor by a creditor were property of the estate); <u>In re Morgansen's Ltd</u>, 302 B.R. 784, 789 (Bankr. E.D. N.Y. 2003) (consigned goods were included in "property of

---

[4] Article 9 of the U.C.C. is enacted as Division 9 of the California Commercial Code.

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 5

**Below is a Memorandum Decision of the Court.**

the estate" and were subject to the claims of estate creditors). These cases, however, all

involved consigned goods delivered <u>prepetition</u>. The Court is not aware of any cases examining

the issue of goods delivered postpetition. Whether prepetition or postpetition, this Court is of the

opinion that a determination based on a property-of-the-estate analysis improperly interprets the

scope of U.C.C. § 9-319(a).

> Bankruptcy nowhere authorizes the court to improve on or improvise with this state
> law fiction. As between the consignor and the consignee under state law, the
> consignor retains title to the goods. The consignee's interest in the goods is limited
> to a possessory interest. Therefore, when the consignee files for bankruptcy, the
> consigned goods do not become property of the estate by operation of Section
> 541(a), although the debtor's possessory interest subjects them to the jurisdiction
> of the bankruptcy court.

Ingrid Michelsen Hillinger, <u>The Treatment of Consignments in Bankr.: Two Codes and Their

Fictions, at Play, in the Fields</u>, 6 Bankr. Dev. J. 73, 98 (1989).

The bankruptcy court in <u>Valley Media</u> recognized that courts differ in their view as to

whether this is really a priority-of-interest or property-of-the-estate analysis. <u>See</u> <u>Valley Media</u>,

279 B.R. at 133 n. 58 and cases cited therein. The <u>Valley Media</u> court recognized, however, that

"courts concur that the consignor holds an unsecured claim against the Debtor as a result of the

11 U.S.C. § 544(a)(1) action, regardless of whether they consider that the inventory has become

property of the estate." <u>Valley Media</u>, 279 B.R. at 133 n.58. Thus, when goods are delivered

prepetition, as between the consignor and a creditor of the consignee (the Trustee), the Trustee

prevails because of § 544. The Trustee has failed to explain how such goods become estate

property, or the Trustee obtains a priority interest, if the goods are instead delivered postpetition.

Although the Court raised § 541(a)(7) as a possible mechanism for bringing these assets

into the estate, the Court is not convinced by the Trustee's and KeyBank's supplemental

arguments that this section is controlling. Under this section, a debtor's estate includes "[a]ny

interest in property that the estate acquires after the commencement of the case." This section

presupposes, however, that the estate has an interest in the property. This section does not

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 6

expand the debtor's interest in the property merely because it was delivered postpetition. The Court agrees with IPC that this section is not intended to expand the property rights that a debtor would possess prepetition under § 541(a)(1). See French v. Marion Gen. Hosp. (In re Patterson), 2008 WL 2276961 at *6 (Bankr. N.D. Ohio June 3, 2008) (stating that § 541(a)(7) does not provide an independent basis for the creation of estate property and "only operates when property is encompassed within the estate in the first instance").

The Trustee and KeyBank also rely on § 552 to argue that the estate has a superior interest in these goods. Section § 552 provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." According to the Trustee and KeyBank, IPC held only an unperfected purchase money security interest in the consigned goods under Cal. Com. Code § 9103(d). Due to § 552, IPC lost even this unperfected status when the Debtor filed bankruptcy. As indicated previously, this argument fails to explain how the property becomes an estate asset in the absence of an intervening lien creditor. As between IPC and the Debtor, this should be analyzed as a consignment agreement, not a security agreement.

Since the Court has determined that the fuel delivered by IPC postpetition (after the petition date and prior to December 19, 2013) is not property of the Debtor's estate, it is not necessary to determine whether the estate's interest, if one existed, would extend to proceeds.

The Court also agrees with IPC that even if the postpetition goods did become property of the estate, the imposition of either a resulting or constructive trust may be appropriate. Although a constructive trust was determined to not be appropriate on the prepetition § 544 claims, this was due primarily to the fact that courts are unwilling to impose a constructive trust to shield a creditor from the reach of § 544 for failure to perfect their interest. No such concerns are present regarding postpetition assets. Imposition of an equitable trust does not thwart the

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 7

priority scheme of the Bankruptcy Code because no intervening rights, such as that of a hypothetical lien creditor, arise in such a situation. Instead, the equities favor IPC, because allowing avoidance would instead elevate the estate's creditors to a more favorable position than they would possess outside of bankruptcy as there are no intervening lien creditors, hypothetical or otherwise.

The Bankruptcy Code is not without limits. Unlike the inventory delivered prepetition, there is no intervening lien creditor to trump IPC's interest in the inventory delivered postpetition. No mechanism exists to bring these assets into the estate.

Accordingly, the Court determines that the transfers the Trustee seeks to avoid pursuant to § 549(a) are not transfers of estate property and thus not avoidable. IPC's Motion is granted.

///End of Memorandum Decision///

MEMORANDUM DECISION ON CONTINUED
MOTIONS FOR SUMMARY JUDGMENT RELATED
TO THE TRUSTEE'S 11 U.S.C. § 549 CLAIMS - 8