Entered on Docket November 3, 2016

Below is a Memorandum Decision of the Court.



_____
**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: <br><br> PETTIT OIL COMPANY, <br><br> Debtor. | **Case No. 13-47285** |
| KATHRYN A. ELLIS, as Trustee for the Bankruptcy Estate of Pettit Oil Company, <br><br> Plaintiff, <br><br> v. <br><br> IPC (USA), INC., a California corporation; PETTIT PROPERTIES, INC., a Washington corporation; and KEYBANK NATIONAL ASSOCIATION, a national banking association, <br><br> Defendants. | **Adversary No. 14-04222** <br><br> **MEMORANDUM DECISION** |

This matter came before the Court on September 29, 2016. Based on the Court's prior rulings and the parties' partial settlements, the only remaining issue is the damage amount the chapter 7 trustee (Trustee) for the bankruptcy estate of Pettit Oil Company (Debtor) may recover from IPC (USA), Inc. (IPC) for the inventory, cash, and accounts receivable that existed on November 25, 2013 (Petition Date) pursuant to 11 U.S.C. § 544.[1]  The parties agree that this is an issue of law that can be resolved by dispositive motion.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION - 1

**Below is a Memorandum Decision of the Court.**

Trial was originally scheduled for five days commencing September 26, 2016. Prior to trial, the remaining parties[2] submitted a Joint Statement of Issues for Trial and an Amended Joint Statement of Issues for Trial, including an Amended Exhibit A to Amended Joint Statement of Issues for Trial (Amended Exhibit A). The parties also filed a Stipulation of Facts for Trial that is incorporated herein. Based on the parties' stipulation, the trial was stricken and the parties agreed to participate in a hearing held September 29, 2016, in order to resolve what they agreed was the remaining issue of law.

As a preliminary matter, counsel for IPC requested permission from the Court to state for the record the agreement between the parties as to the dollar value for the accounts receivable payments received directly by IPC on the Petition Date (Direct A/R Payments). IPC concedes that the Court already ruled that the Direct A/R Payments are recoverable by the Trustee in its oral decision rendered July 1, 2016 (Oral Decision), and in the order incorporating its Oral Decision entered the same date. See Order on Continued Motions for Partial Summary Judgment Related to the Trustee's 11 U.S.C. § 544 Claims (Order on Continued Motions), ECF No. 115. It is IPC's position, however, that the Court's prior ruling was in error and that the dollar amount for the Direct A/R Payments should be deducted from the Trustee's total damage claim. IPC also contends that the accounts receivable from foreign sales (Foreign Sales[3]), which were not specifically addressed in the Oral Decision, should be deducted from the total damage claim. The Amended Exhibit A sets forth four scenarios for damages depending on whether both Direct A/R Payments and Foreign Sales, only Direct A/R Payments, only Foreign Sales, or neither are deducted from the Trustee's total damage claim.

---

[2] All causes of action, counterclaims and cross claims regarding Defendant KeyBank National Association (KeyBank) have been resolved by prior settlement, agreement or order. See Order Granting KeyBank's Motion for Partial Summary Judgment, ECF No. 88; Ex Parte Stipulated Order of Dismissal of Certain Causes of Action and Limitation of Damages on Certain Causes of Action, ECF No. 114; Ex Parte Stipulated Order of Dismissal of Certain Causes of Action, Counterclaim and Cross Claims, ECF No. 120.

[3] This term is defined in the Stipulation of Facts for Trial as "[w]hen another participant dealer's customers . . . used a card lock access card to purchase fuel from one of the Debtor's card lock facilities." Stipulation of Facts for Trial 2:16-19, ECF No. 129

MEMORANDUM DECISION - 2

With respect to the Direct A/R Payments, although IPC has not sought reconsideration of or moved for relief from the Order on Continued Motions under Fed. R. Civ. P. 60(b),[4] as previously stated, IPC contends that one of the Court's bases for its ruling was in error. Specifically, IPC argues that it was incorrect to conclude that adopting IPC's view would place IPC in a better position as to the proceeds than the original unperfected collateral vis-à-vis secured creditors of the Debtor. Because a final order or judgment has not yet been entered in this case, the Court reviewed its prior ruling. In its Oral Decision, the Court provided numerous legal bases supporting its rejection of IPC's argument that the Trustee's lien under § 544 does not extend to accounts receivable and cash proceeds in the Debtor's possession on the Petition Date. The specific rationale now complained of by IPC is just one of several rationales relied upon by the Court, and its error, if any, has no effect on the Court's ruling that IPC's unperfected interests are subordinate to the Trustee's senior interest as a hypothetical lien creditor. Moreover, contrary to IPC's concerns, the Court did not address KeyBank's lien or its priority position in the collateral, accounts receivable, or cash proceeds. The Court declines IPC's invitation to revise its Oral Decision or the Order on Continued Motions.

The remaining legal issue argued by the parties at the September 29, 2016 hearing is whether the Foreign Sales in existence as of the Petition Date are recoverable by the Trustee under § 544. The parties stipulate that the dollar amount of Foreign Sales as of the Petition Date is $581,270.

IPC initially argues the Foreign Sales are not recoverable by the Trustee because ownership of the Foreign Sales transferred from the Debtor to IPC prepetition. Specifically, IPC relies on the following language from the Stipulation of Facts for Trial, as evidence of the parties' agreement:

---

[4] This rule is made applicable to adversary proceedings by Fed. R. Bankr. P. 9024.

MEMORANDUM DECISION - 3

> In conjunction with the CS&A [sic],[5] IPC agreed to fund the network service providers when "remote" sales exceeded "foreign" sales in accordance with a Settlement, and the Debtor agreed that Pacific Pride could pay IPC directly for amounts when "foreign" sales exceeded "remote" sales in accordance with a Settlement.

Stipulation of Facts for Trial 4:15-19, ECF No. 129.

IPC's argument appears to be that because IPC funded the Foreign Sales rather than the Debtor, the parties' intended for the Foreign Sales to be a property interest of IPC. IPC also relies on the fact that Pacific Pride paid IPC directly for net sums owing for Foreign Sales. See Stipulation of Facts for Trial 5:16-19, ECF No. 129. IPC acknowledges that there are no other written documents further evidencing this agreement and stated at the September 29th hearing that the Court can rely solely on the Stipulation of Facts for Trial and C&SA to establish the change in ownership.

Despite the parties' intentions, IPC fails to provide any legal bases to explain what effect, if any, the parties' understanding or course of dealings would have on the Trustee's entitlement to a senior interest in the Foreign Sales under § 544. Although the issue of "Foreign Sales" has only recently been brought before the Court, this argument regarding ownership has already been addressed and rejected. On summary judgment, the Court ruled that IPC merely held an unperfected security interest in the accounts receivable as of the Petition Date. This is true despite what may have been discussed by the parties or intended. As previously determined, it makes no difference that the C&SA provided that ownership and title of the fuel in the Debtor's card locks remained with IPC. See Memorandum Decision on Motions for Summary Judgment Related to the Trustee's § 549 Claims 7:11-17, ECF No. 89; see also Memorandum Decision on Motions for Partial Summary Judgment Related to the Trustee's § 544 Claims 4:21-23, ECF No. 91 (stating that "where a consignor has failed to perfect its security interest in consigned goods, it may not assert an ownership right as to the consigned goods held by a debtor and defeat a

---

[5] Consignment & Service Agreement (C&SA) entered into between the Debtor and IPC on or about September 1, 2013.

MEMORANDUM DECISION - 4

hypothetical lien creditor under § 544(a)" (citations omitted)). The fact that the sum of net Foreign Sales were paid directly to IPC does not alter this analysis. Foreign Sales are still accounts receivable from the sale of consigned fuel in which the Trustee has a priority interest over IPC.

IPC next argues that the Foreign Sales are subject to recoupment and thus not recoverable by the Trustee. The right of recoupment is an equitable doctrine that is closely related to the right of setoff. Both setoff and recoupment operate to reduce a creditor's claim against the debtor's estate. "Setoff" refers to the adjustment of mutual debts that arise out of separate transactions, while "recoupment" is the netting of debts arising from a single transaction. Harmon v. Oregon (In re Harmon), 188 B.R. 421, 425 (9th Cir. BAP 1995).

Unlike setoff, recoupment is not limited to prepetition claims and thus may be employed to recover across the petition date. Although often thought to be less restrictive than the requirements for setoff, both recoupment and setoff require the existence of mutual obligations between a debtor and a creditor. Newbery Corp. v. Fireman's Fund Ins. Co. (In re Newberry), 95 F.3d 1392, 1398-1400 (9th Cir. 1996). Claims giving rise to recoupment must arise from the same transaction or occurrence that gave rise to the liability sought to be enforced by the bankruptcy estate. In re TLC Hosps., Inc., 224 F.3d 1008, 1011 (9th Cir. 2000). Unlike setoff, recoupment is merely defensive in nature and may not be asserted independently as a claim for relief. IPC indicated at the September 29, 2016 hearing that it is only asserting a recoupment defense.

The Trustee argues that recoupment is not applicable to the Foreign Sales because there is no countervailing claim. Recoupment is only available when there are countervailing claims between the plaintiff and the defendant. See Harmon, 188 B.R. at 425 (quoting In re Hiler, 99 B.R. 238, 243 (Bankr. D. N.J. 1989)). The Court agrees.

IPC was paid in full through the settlement process. As set forth in the Stipulation of Facts for Trial, the network providers would total all Remote and Foreign Sales on an agreed

MEMORANDUM DECISION - 5

upon schedule and issue the Debtor a settlement statement. When the Foreign Sales exceeded the Remote Sales, the network service provider paid the difference to the Debtor, with the exception of Pacific Pride who paid IPC directly. It is undisputed that Pacific Pride settled its portion owing of the $581,270 in Foreign Sales by paying IPC directly on December 6, 2013. See Stipulation of Facts for Trial 6:4-7, ECF No. 129. Accordingly, IPC currently has no countervailing claim to be asserted as a defense to the Trustee's claim.

IPC disagrees and argues that mutual debts and countervailing claims arose daily, as Foreign Sales and Remote Sales occurred continuously and then were reconciled through the settlement process on a set schedule. While this may be true, the mutual debts were between IPC and in the case of Foreign Sales, Pacific Pride. A mutual debt did not arise between IPC and the Debtor, or the Debtor's estate on the Petition Date. The Court is not aware of any caselaw allowing recoupment in such circumstances, in part because the situation before the Court does not fit the fact pattern required to make recoupment a valid defense.

The doctrine of recoupment by definition involves reciprocal claims. Thus, triangular recoupments are precluded. See, e.g., Barber v. Riverside Int'l Trucks, Inc. (In re Pearson Indus., Inc.), 142 B.R. 831, 849 (Bankr. C.D. Ill. 1992); 1 Bankruptcy Law Manual § 6:67 (5th ed. 2016); see also 5 Collier on Bankruptcy ¶ 553.03[b][i], p. 553-28, 29 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (triangular setoffs generally not permitted). IPC is attempting to impose a triangular recoupment. In this case, IPC and Pacific Pride appear to have had mutual claims against each other for the Remote and Foreign Sales. The Trustee has a claim against IPC for the Foreign Sales pursuant to § 544 as previously determined by the Court. IPC has no countervailing claim against the estate, but for, the Trustee's avoidance action. In other words, IPC's claim only arises when a judgment is entered in the Trustee's favor, at which point IPC is entitled to an unsecured prepetition claim.

Confusing the issue even more is the fact that the above scenario infers a mutual debt between IPC and Pacific Pride. Although it was apparently the practice from October 2013 forward for Pacific Pride to pay IPC directly, it has not been established that there was any legally enforceable obligation to do so by either party. Despite this practice, it may be that the debt instead flowed from Pacific Pride to the Debtor, who was then obligated to remit the net Foreign Sales to IPC. The Court is not required, however, to resolve this issue to rule on recoupment. Under either scenario, recoupment is unavailable to IPC because of the lack of mutual debts.

IPC cites Newberry for the proposition that the Ninth Circuit Court of Appeals (Ninth Circuit) has determined that recoupment does not require the strict mutuality of debts, and instead focuses on whether or not the claims arise out of the same transaction. As the Newberry court further explained, however, what is relaxed for recoupment is the setoff requirement that the debts be prepetition in order to be mutual. Newberry, 95 F.3d at 1399. What is not relaxed for recoupment is the requirement that there be countervailing claims.

IPC focused a substantial portion of its briefing on the "transaction" created by the C&SA and the relationships between IPC, the Debtor and the card lock service networks. Even if the Court were able to conclude, however, that this relationship should be considered a single or the same transaction, recoupment is inapplicable as a defense to the Trustee's claim due to the lack of a countervailing claim by IPC.

In support of its position, IPC relies on caselaw holding that a bankruptcy trustee takes property subject to rights of recoupment. See, e.g., In re Madigan, 270 B.R. 749, 754 (9th Cir. BAP 2001); Rainsdon v. Davisco Foods Int'l, Inc. (In re Azevedo), 497 B.R. 590, 596 (Bankr. D. Idaho 2013). The Court agrees with this simple statement; however, this proposition does not strengthen IPC's argument. It is undisputed that the Trustee acquired a superior lien in the accounts receivable, including Foreign Sales, subject to recoupment rights. This does not mean, however, that recoupment can be used to defeat § 544 in the absence of countervailing claims.

MEMORANDUM DECISION - 7

The flaw in IPC's argument is that this case is not one where the Trustee's rights are subject to recoupment, but where the recoupment defense would not exist, but for § 544.

Both parties also raise equitable arguments in favor of their positions. As recoupment is based on equity, courts apply the defense "in bankruptcy cases only when 'it would . . . be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations.'" <u>Newberry</u>, 95 F.3d at 1403 (quoting <u>Univ. Medical Center v. Sullivan (In re Univ. Medical Center)</u>, 973 F.2d 1065, 1081 (3rd Cir. 1992) (alterations to the original in the quoted text)). Equity alone, however, cannot be used to apply recoupment when it is otherwise inapplicable.

The Trustee further argues that IPC gave up any recoupment rights when it settled its claims with KeyBank. IPC strongly disagrees. The Court has very little information as to the details of the parties' settlement and whether it is sufficiently broad to cover IPC's recoupment claim. The Court will refrain from ruling on this issue as it would appear to require further briefing or an evidentiary hearing.

This Court has previously ruled that the Trustee has a superior lien under § 544 in accounts receivable generated from the sale of consigned fuel, which includes the Foreign Sales. As IPC has no defense to the Trustee's claim, the Court concludes that Foreign Sales and Direct A/R Payments will not be deducted from the Trustee's total damage claim. The Trustee is entitled to damages in the amount of $5,493,498.69 as set forth in Amended Exhibit A to the Amended Joint Statement of Issues for Trial. The Trustee shall prepare an order incorporating this Memorandum Decision and note the matter for presentation on November 22, 2016 at 9:00 a.m., in U.S. Bankruptcy Court, 1717 Pacific Avenue, Courtroom H, Tacoma, Washington.

///End of Memorandum Decision///